Hood and others *v.* First Nat. Bank of Tremont and others.[1]

*(Circuit Court, E. D. Pennsylvania.* November 18, 1886.)

RECEIVER—APPOINTMENT—LACHES.

An application for the appointment of a receiver, which has been allowed to sleep for six years, will be denied, although some testimony has been taken in the mean time.

In Equity.

*George M. Roads,* for complainants.

*G. E. Farquhar,* for respondents.

Butler, J. The material allegations of the bill are as follows:

"(7) That early in 1879 the said board of directors directed Wm. A. Huber, president, and Aug. W. Huber, vice-president, as aforementioned, to act in settling up the business of the said bank, and to sell the property, real and personal, of the said bank, as president and vice-president, and also as trustees of said bank.

"(8) That said Wm. A. Huber, president, and Aug. W. Huber, vice-president, as aforesaid, as trustees for the First National Bank of Tremont, sold, on October 13, 1880, at public sale, certain interests and titles to 33 tracts or pieces of land, together with furniture, policies of insurance, and other personal property belonging to the said bank, without having entered into bonds, or given security of any kind, for the faithful discharge of their trusts, and for the protection of the minority stockholders.

"(9) That at said sale no information was given to inquiring bidders as to the titles of or incumbrances against said properties; one of the said properties (as per No. 15 appended sale-bill) being advertised and sold without any description, excepting that said property was a house and lot, 14x150 ft., on Clay St., Tremont.

"(10) That No. 1 of said properties was sold at sheriff's sale at Pottsville, Pa., on February 13, 1880, and purchased by Wm. A. Huber, trustee, for $5,100.

"(11) That the said property [No. 1] was sold at the aforementioned trustees' sale, held on October 13, 1880, to one Geo. D. Rise, a step-son of the said Wm. A. Huber, for $500.

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

"(12) That the said Wm. A. Huber, trustee, has admitted that the said Rise purchased said [No. 1] property for the personal use and benefit of said Wm. A. and Aug. W. Huber.

"(13) That the said property [purchased, as aforesaid, for $500 by the said Rise, for and to the use of the said Wm. A. and Aug. W. Huber] is the security for $11,000 worth of bonds held by the said bank; said [No. 1] property virtually costing the said bank $17,300.

"(14) That the said Wm. A. Huber personally, and contrary to law, purchased, at the said trustees' sale, a large bank-safe, which formed a part of the assets of the said bank.

"(15) That the majority of the sales at said trustees' sale were made to the said Geo. D. Rise, who made said purchases for the said W. A. and Aug. W. Huber, for their own use and benefit.

"(16) That because of the meager description of the majority of the properties offered for sale by the said trustees, (as per amended sale-bill,) purchasers were greatly hindered from bidding; no other information concerning said properties being given than could be gleaned from the said bill of sale.

"(17) That your orators have good reason to believe that the said bank has been managed in a grossly negligent and fraudulent manner, and the valuable assets of said bank are being bought up by said trustees at their own sale, at nominal sums, to the great injury and loss of the creditors and stockholders of the said bank. Your orators are therefore in need of equitable relief.

"To the end, therefore, that your orators may obtain the equitable relief necessary to them, and that the said defendants may make answer to the premises, and make full disclosures pertinent to the plaintiff's case, may it please your honors to grant to your orators the writ of subpœna, to be directed to each of the said defendants. And also (1) to set aside the within-mentioned sale by the said trustees; (2) that a receiver be appointed of all the franchises and property, real and personal, wheresoever situated, belonging to the First National Bank of Tremont, with power to sue for and collect all sums and claims due to the said the First National Bank of Tremont, and to liquidate all claims and debts against the said bank."

The prayers were for the appointment of receivers, for an order forbidding the trustees parting with the property, and for other relief. Subsequently the property involved was sold by agreement of the parties, and this branch of the case has been disposed of. Nothing material remains but the application for receivers, based upon the allegation of mismanagement of the affairs of the bank. This application has been allowed to sleep for more than six years. Considerable testimony has been taken, but this should not have required more than a few months. Passing by the question whether the charge of mismanagement is sufficiently specific, we think the delay in pressing the motion for receivers should, of itself, require a denial of the application. Furthermore, an examination of the testimony taken has failed to satisfy us that the motion should be granted, had this delay not occurred. The mismanagement, charged in general terms against the respondents, is not made out with the clearness necessary to justify interference. The application for receivers is therefore denied.